The indictment charged Henry Mays with the robbery of Andy McClain by taking $598.62 from his person and by putting him in fear. The jury found the appellant "guilty of robbery as charged" and fixed punishment at 15 years imprisonment. The trial court then set sentence in accordance with this verdict.
The appellant's motion for new trial was overruled.
Andy McClain testified that he was employed at the Hull Street IGA Store in Montgomery, Alabama on September 3, 1974. He testified that at about 9:45 that morning a little short fellow came in the store and stuck a gun in his side and said, "Let's go to the back room. I am going to kill you." McClain indicated that the party marched him to the rear and he noticed that Mr. Pickett was also covered by a companion who also held a gun at his head. McClain stated the party asked him, "Where is the safe?" and to open it, and he replied, "There's nothing in the safe," and the party said, "Look again, look again." He stated the party then asked him, "Well, where is the money?" and McClain replied, "Up front in the registers."
At this point he observed three people, each with guns, and he marched him to a point near the cash register and McClain was told, "Man, I want money, I want money. I want plenty of money. I want all the money you've got or I'm going to kill you." He testified that two of these men had handkerchiefs tied over their mouths but that he recognized the appellant whom he positively identified in court as being one of the three men in the store with guns that morning. He further testified that the men took the money from the cash register and that he subsequently identified the appellant at a police lineup but that his identification in court was because he was the man he had seen in the store on the morning in question. He described the appellant as wearing a blue jumper jacket with blue jean pants, without a hat but a white handkerchief tied across his mouth.
Steve Pickett testified that he was employed at the Hull Street IGA Store in Montgomery, on September 3, 1974. He testified that a black man came in and stuck a gun in his back and told him "This is a stickup," as he was getting a coke from the coke machine. He stated that the man hit him twice in the back of the head and told him if he looked, he would shoot him. He could not make a positive identification of the men but did see another man holding a gun on Andy McClain.
Sylvia Graham testified that she entered the IGA Store on Hull Street after taking her children to school on the morning of September 3, 1974. She stated that there were three men in the store with guns drawn and that they told people in the store, "Everybody get on their knees," and that they took the money from the cash register. She stated that she saw the appellant with a pistol pointed at people in the store that morning and that she thought the appellant was the one who said, "Give me that money, give me all of it," and then, "Everybody get on their knees." She stated that she subsequently identified the appellant at a police lineup and made a positive in-court identification of him at trial.
John Roth testified that he walked in the IGA Store on the morning of September 3, 1974 and observed a "hold-up" in progress. He stated as he walked to the cash registers he saw three men with pistols and he heard Andy McClain state that "he didn't have any more money," and saw an individual with a nickel-plated revolver pointed on him and a white cloth on his face telling him to get down on his knees. He stated that he was forced to his knees and that his wallet was taken but that he could not identify any of the three robbers. *Page 248 
Vera Spurgeon testified that on September 3, 1974, she had gone to the IGA Store on Hull Street to shop. That as she was looking about, she saw two men with pistols and handkerchiefs covering their faces. She stated she saw the appellant come over to the cash register and that his companion took the money out. She stated that she got a good look at the appellant while he was standing by the door in the store and made a positive in-court identification of him. She stated that the appellant had told her while in the store to lie down on the floor and asked her, "What are you looking at, old woman?"
At the close of the State's case the appellant made a motion to dismiss and a motion to exclude, but did not present any testimony at trial.
 I
In Tarver v. State, 53 Ala. App. 661, 303 So.2d 161, Judge Harris stated the following:
 "The three essential elements of the crime of robbery are: (a) felonious intent, (b) force, or putting in fear as a means of effecting the intent, and (c) by that means of taking and carrying away of the property of another from his person or in his presence, all of these elements concurring in point of time. Douglass v. State, 21 Ala. App. 289, 107 So. 791; Hardis v. State, 28 Ala. App. 524, 189 So. 216; Cobern v. State, 273 Ala. 547, 142 So.2d 869; Floyd v. State, 52 Ala. App. 291, 291 So.2d 382."
We are of the opinion that the State here presented a prima facie case and the appellant's motions were properly overruled at trial. Clay v. State, 52 Ala. App. 272, 291 So.2d 364;Tarver v. State, supra.
 II
The appellant contends that the evidence showed that the money was taken from the cash registers in the front of the store and the indictment charged the appellant with the robbery of Andy McClain, hence, there is a variance between the pleading and the proof. To sustain a charge of robbery it is not necessary that the stolen property be in the actual physical contact with the person of the victim, but it is sufficient if the property is taken from his presence or personal protection. Cobern v. State, 273 Ala. 547,142 So.2d 869. Moreover, in an indictment for robbery, ownership of the stolen property is properly laid in the party in possession, either as owner, or bailee, or agent. See Bray v. State,47 Ala. App. 308, 253 So.2d 531, and authorities therein cited.
It is not necessary that title be in the person robbed.Douglass v. State, 21 Ala. App. 289, 107 So. 791. Bowman v.State, 44 Ala. App. 331, 208 So.2d 241.
We have carefully searched this record and find same to be free of error. The judgment is therefore due to be and the same is hereby
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., concur.
CATES, P.J., not sitting. *Page 249