319 So.2d 740

**Howard PAIGE**

**v.**

**STATE.**

**3 Div. 361.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

Carl O. Pilgrim, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and James S. Ward, Asst. Atty. Gen., for the State.

TYSON, Judge.

The indictment by the grand jury of Butler County, Alabama, charged the appellant with the robbery of one Sally Dortch. The jury's verdict found appellant "guilty of robbery as charged in the

indictment," and fixed punishment at ten years imprisonment in the penitentiary. The trial court then entered judgment, setting sentence in accordance with this verdict.

Sally Dortch testified that she was ninety-seven years old and lived in Chapman in Butler County, Alabama. She stated on the evening of March 21, 1974, she ate dinner, locked the door, and went to bed early at which time she was the only person in the house. Mrs. Dortch testified that she was later awakened by someone running their hand over her mouth, that she flipped a light switch by her bed and saw the appellant, Howard Paige, whom she positively identified in court. She added that she had known the appellant since he was born. Mrs. Dortch said there were several other men in her room with the appellant, and one of them quickly turned the light off while appellant and the others grabbed her "notion belt" which was tied around her waist beneath her nightgown; that she tried to stop them but the appellant had his hands around her neck and was trying to choke her. The witness stated that she was unsure of the exact amount of money in her "notion bag," that she thought it was $37.00, but was positive that it had contained a five dollar bill. After taking the money, the men tied her head, hands, and feet with cord, clothing, stockings, and a sweater that they found in the room and then left.

Mrs. Dortch stated that the first people she saw the next morning were Alice McMeans and a Mr. Morgan, that the cord was so tight that Mr. Morgan had to cut it. She said that her son, Alfred Marshall, arrived "up in the day." After talking with Alfred, she spoke with a police officer but did not at that time identify the appellant as one of her assailants. However, when the officer returned on the following morning, she told him that three men had broken into her house and robbed her and that one of the men was the appellant whom she had known "all of his days." Mrs. Dortch stated that after she had talked with Alfred and the policeman, some people took her to the doctor.

On cross-examination Mrs. Dortch testified that the robbery occurred between 9:00 p. m. and midnight, because sometime after the men left, she heard the chickens crow for the first time, which would have been around midnight. She also stated that she had worn glasses for five or six years but did not have them on at the time the men were in her room. Mrs. Dortch also testified that on the morning after the robbery she told no one but her son, Alfred Marshall, who the men were that attacked and robbed her the night before. She said that her son swore out the warrant against the appellant.

Irvin Branch testified that on the morning of March 22, 1974, pursuant to his duties as Deputy Sheriff of Butler County, Alabama, he went to Sally Dortch's house in Chapman, Alabama. Upon his arrival, he found Sally Dortch with bindings around her neck, arms, and legs, some of which were so tight that they had to be cut away, leaving deep impressions in her arms where the cord had been. He said that during his investigation he asked Sally to bolt her door as she had before going to bed the night before; that he was able to slip a pocket knife through a crack in the door, lift the "two by four" used to bolt the door up and out through the crack, and walk through the door all within thirty seconds.

On cross-examination, Officer Branch testified that he arrived at Sally Dortch's house around 10:00 or 11:00 a. m., on March 22, 1974, the morning after the robbery. He said that Sally's son, Alfred Marshall, and daughter, Ethel Owens, were both there, but neither of them told him who committed the robbery. Branch stated that Sally was crying and very unstable, that her only response to his inquiry as to the identity of the robbers was "Mutt's boy and Pepperhead," and that she was afraid they were coming back. He said that on the morning of March 22, he was informed that $37.00 had been taken from the waist

of Sally Dortch, and that at a later date he learned that there had also been $5.00 taken from an insurance packet above the victim's bed.

Officer Branch testified that he dusted Mrs. Dortch's house but uncovered no fingerprints. He also stated that the victim's money belt had never been found. Branch said that he arrested the appellant after the victim identified him, and that Alfred Marshall subsequently swore out a warrant. He concluded by stating that Sally Dortch said that she scratched one of the men in the face, but that when he arrested the appellant, his face was unmarked.

Alfred Marshall testified that he went to his mother's house on the morning of March 22, 1974, after receiving word that she had been found tied up in her room. He stated that he knew the appellant, Howard Paige, and his wife Kathryn, that Kathryn's mother's nickname was "Mutt." Marshall said that when he reached his mother's house on the morning after the robbery, his mother was upset and crying and he took her to the doctor.

On cross-examination, Marshall testified that on the morning after the robbery, his mother told him that the appellant, "Pepperhead," and Johnny Lee Preyer had done it, that he thought he passed this information on to Officer Branch the same morning, but it could have been another morning. He said that he swore out a warrant for the appellant's arrest on the same morning that he gave Branch the three men's names.

Appellant called Euell Downey, Jesse Scott, and Robert L. Austin to the stand, each of whom testified to the appellant's good reputation for truth and veracity. In addition, Austin, Principal of Middle School in Georgiana, Alabama, testified that he had known Sally Dortch for thirty years, and her reputation for truth and veracity was bad. On cross-examination, Austin stated that one of appellant's attorneys, Richard P. Hartley, was Chairman of the Board of Education, but on redirect said that he, Austin, was covered by tenure.

Appellant, Howard Paige, denied taking any part in the robbery of Sally Dortch. He testified that he was thirty-three years old and married to Essie Boyd's daughter, Kathryn. Appellant stated that on March 21, 1974, he worked for Mr. Greely, a carpenter, but that he did not go to work on that day because the weather was bad. He said that he and his wife lived with Maggie Howard in her house in Chapman, that between 4:30 and 5:00 o'clock on the afternoon of March 21, 1974, he caught a ride with Early Boggan to Georgiana where he visited several friends and relatives before walking over to his brother's, Ollie Paige's, house around 8:00 p. m. Appellant stayed there for a while and then Ollie and his wife, Christine, drove him the three miles back to Chapman, and dropped him off in Maggie Howard's front yard, at approximately 9:30 p. m. He entered the house, passed through a room in which his wife, Maggie Howard, and Johnny Preyer were watching television, went into the kitchen, ate dinner, and then walked back into his room and went to sleep. The appellant explained that he did not get up that night, that he did not leave his room after he went to bed. He said that he knew Sally Dortch's son, Alfred Marshall, that the two of them once had a few words over a sum of money owed for whiskey.

Ollie Paige, the appellant's brother, testified that he was thirty-six years old and lived in Georgiana, Alabama. He stated that the appellant arrived on foot at his house at around 8:00 p. m. on the night of March 21, 1974. Ollie Paige said that he and his wife left sometime after 9:00 p. m. to drive his brother home, that they let him off at Maggie Howard's house in Chapman, and that when he and his wife got back to their house in Georgiana, the ten o'clock news was on television.

On cross-examination, Ollie Paige testified that he and his wife let the appellant off in front of Maggie Howard's house at

9:30 p. m. on March 21, 1974, and that he did not see his brother again that night.

Maggie Howard testified that she was sixty-one years old and lived in Chapman, Alabama, about a block away from Sally Dortch. She stated that Howard and Kathryn Paige lived in her house with her, that she had raised Kathryn as an adopted child, but that Essie Boyd was her real mother. Mrs. Howard stated that she saw the appellant come in around 9:30 p. m., on the night of March 21, 1974, that he passed through her room, where she and Kathryn were watching television, and walked back into the kitchen. She said that the appellant ate dinner and then went to bed, that his room was in the rear of the house with the kitchen between it and her room.

On cross-examination, Maggie Howard testified that on the night of March 21, 1974, Johnny Lee Preyer, and both Ben and "Pepperhead" Boyd were at her house, as was her son, Jackie Bailey, and that the three of them were back in Jackie's room. She said that there were two rooms in the back of her house behind the kitchen, that one of them was the appellant's, the other was her son's, and that it would be possible to go from the appellant's room through her son's room, and out the front door without entering her room. Mrs. Howard further stated that there was a bad storm the night of the robbery. On redirect, she said that as far as she knew the appellant did not go into her son's room where the other men were.

The last witness to be called was appellant's wife, Kathryn Paige. She testified that she was raised by Maggie Howard, but that her real mother was Essie Boyd, whose nickname was "Mutt." Mrs. Paige said that her husband did not work on the day of the robbery, that he left home for Georgiana that day around 3:30 or 4:00 p. m., and returned at approximately 9:30 p. m. She stated that when her husband came in, she was in Maggie's room watching television with Maggie and Johnny Lee

Preyer. Mrs. Paige continued by explaining that her husband came in, ate dinner, and went straight to bed, that she went to bed later, around midnight. She said that she did not see or hear her husband leave his room at any time before or after she went to bed.

On cross-examination, Mrs. Paige stated that she could not see into the back room where her husband was sleeping from the room in the front of the house where she was watching television. She also said that there were windows in the room her husband was sleeping in, that there was a two-hour period of time after he went to bed, and before she did, that she did not see her husband, that when she did go to bed, her husband still had his clothes on.

On redirect, Mrs. Paige testified that Ben and "Pepperhead" Boyd did not leave Maggie Howard's house until midnight, that she went to bed shortly thereafter and found the appellant asleep in bed.

The appellant's request for the affirmative charge was refused.

I

■ By virtue of appellant's request in writing for the affirmative charge, the weight and sufficiency of the State's evidence is now before us for review.

In *Tarver v. State,* 53 Ala.App. 661, 303 So.2d 161 (1974), Judge Harris, in speaking for this Court, observed:

"The three essential elements of the crime of robbery are: (a) felonious intent, (b) force, or putting in fear as a means of effecting the intent, and (c) by that means of taking and carrying away of the property of another from his person or in his presence, all of these elements concurring in point of time. *Douglass v. State,* 21 Ala.App. 289, 107 So. 791; *Hardin v. State,* 28 Ala.App. 524, 189 So. 216; *Cobern v. State,* 273 Ala. 547, 142 So.2d 869; *Floyd v. State,* 52 Ala.App. 291, 291 So.2d 382."

■ In the instant case, the State's evidence was to the effect that several men broke into the home of a ninety-seven year old woman in the dead of night while she was sleeping, and forcefully removed her money belt from around her waist as she struggled to defend herself. In court, the victim positively identified the appellant as one of her assailants and further testified that she had known him "all of his born days." We are of the opinion that the State here presented a prima facie case of robbery. *Raybon v. State* (1975), 55 Ala. App. 143, 313 So.2d 570, and authorities therein cited.

## II

■ A conflict in the testimony between the appellant's alibi and that of the State presented a question for the jury. *Mc-Colston v. State,* 20 Ala.App. 591, 104 So. 347; *Raybon v. State*, supra.

We have carefully examined this record and find no error therein. The judgment of the trial court is due to be and the same is hereby

Affirmed.

All the Judges concur.